# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 17-cr-083 (KBJ) |
| | ) | |
| KEITH J. YOUNG, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

As a legal doctrine, criminal forfeiture under section 853 of Title 21 of the United States Code has evolved considerably over the past few decades; indeed, the doctrinal underpinnings of many forfeiture practices have yet to be fully developed. The government has proposed one such fledgling theory of criminal forfeiture in the instant case: based on Defendant Keith Young's conviction at trial of one count of unlawful possession with intent to distribute one kilogram or more of heroin, the government seeks a forfeiture money judgment in the amount of $180,000, which is the estimated value of the two kilograms of heroin that law enforcement officers seized from Young's residence. (*See* Gov't's Supp. Mem. Regarding Forfeiture ("Gov't's Supp. Mem."), ECF No. 59, at 8–9.)[1] As the Court understands it, the government's proposed forfeiture order rests on the assumption that Young once used money ($180,000) to "facilitate" his illegal drug-distribution conduct when he bought the recovered heroin, and is also rooted in the contention that the spent $180,000 qualifies as forfeitable facilitating property for the purpose of section 853(a)(2), separate and

---

[1] Page numbers herein refer to those that the Court's electronic case-filing system automatically assigns.

apart from the recovered heroin upon which that figure is based. (*See id.*) Thus, despite the fact that the government has already seized the very drugs that Young allegedly tendered $180,000 to purchase, the government maintains that Young should also be ordered to forfeit an additional $180,000 as a criminal penalty under section 853(a)(2). (*Id.*) This Court declined to adopt this novel drug-seizure-plus-equivalent-money-judgment criminal forfeiture theory on July 18, 2018. (*See* Prelim. Order of Forfeiture, ECF No. 65, at 5–6 (requiring Young to forfeit property constituting, or derived from, any proceeds obtained from the drug offense, as well as certain other facilitating property, but not including the requested money judgment).)

This Memorandum Opinion explains the basis for the Court's conclusion that the government's proposed $180,000 money-judgment forfeiture order must be rejected. In short, the Court is confident that there is no legal basis for the government's contention that Congress has authorized *both* the relinquishment of forfeitable property that the government has seized from a criminal defendant *and* the amount of money that the defendant purportedly previously used to acquire that same property. In this Court's view, such a forfeiture order constitutes improper double counting that the criminal forfeiture statutes neither direct nor envision. Moreover, the Court's double-counting concern exists without regard to the reason that the seized property is subject to forfeiture, which makes the fact that the heroin at issue here is itself illegal contraband (and is thus inherently forfeitable) entirely irrelevant to the applicable forfeiture analysis.

# I.    BACKGROUND

On April 25, 2017, agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") executed a search warrant at Young's residence in Southeast Washington, D.C., after investigating trash from the residence on three previous occasions in the preceding weeks.  (*See* Revised Final Presentence Investigation Report ("PSR"), ECF No. 67, ¶ 7.)[2]  During the search of the home, law enforcement agents recovered: 2,020 grams of heroin; a Glock 21, .45 caliber firearm with an extended magazine containing 25 rounds of .45 caliber ammunition; other ammunition of various types; $14,707 in United States currency; and other drug-related goods, such as sifters, a blender, a bottle of Mannitol, ziploc bags, and a digital scale.  (*See id.* ¶¶ 8–10.)

On April 27, 2017, Young was charged in a three-count indictment with possession with intent to distribute one kilogram or more of heroin, in violation of sections 841(a)(1) and (b)(1)(A)(i) of Title 21 of the United States Code (Count One); possession of a firearm by a person convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of section 922(g)(1) of Title 18 of the United States Code (Count Two); and using, carrying, and possessing a firearm during a drug trafficking offense, in violation of section 924(c)(1) of Title 18 of the United States Code(Count Three).  (*See* Indictment, ECF No. 4, at 1–2.)  The indictment also put Young on notice that the government sought criminal forfeiture in the case under section 853(a) of Title 21 of the United States Code with respect to Count One, and under section 924(d) of Title 18 of the United States Code with respect to Counts Two and Three, including forfeiture of certain gun- and ammunition-related specific

---

[2] Neither party objected to the facts outlined in the Probation Office's Presentence Investigation Report (*see* PSR at 27), and the Court adopted the facts contained in the report during Young's sentencing.

property; $14,707 in U.S. currency recovered on April 25, 2017; and a money judgment in an unspecified amount. (*See id.* at 2–4.) The case proceeded to a jury trial, which commenced on April 23, 2018, and on April 27, 2018, the jury convicted Young of Count One (possession with intent to distribute one kilogram or more of heroin) and Count Two (possession of a firearm by a felon), but acquitted Young of Count Three (possessing a firearm during a drug trafficking offense). (*See* Verdict Form, ECF No. 55, at 1–2.)

In the lead-up to the trial and during the post-conviction proceedings, the government vigorously maintained that, as part of any forfeiture order, it was entitled to a money judgment in the amount of $180,000—an amount equal to the estimated value of the two kilograms of heroin that had been seized from Young's residence. In a pretrial memorandum regarding forfeiture, the government specifically announced its intention to seek a money judgment in the value of the recovered heroin in addition to the forfeiture of $14,707 in cash found in Young's home in the event of a conviction under Count One, and the forfeiture of the recovered firearm and ammunition if Young was convicted under Counts Two or Three. (*See* Gov't's Pretrial Mem. Regarding Applicable Procedures for Forfeiture Phase of Trial ("Gov't's Pretrial Mem."), ECF No. 42, at 9–10.) Similarly, in a supplemental memorandum regarding forfeiture, the government reiterated its position that it was requesting "a forfeiture money judgment reflecting the amount of money that the defendant used to purchase the approximately two kilograms of heroin the jury found in the defendant's possession[,]" on the grounds that Young had allegedly used that amount of money to facilitate the commission of his crime by buying the drugs. (Gov't's Supp. Mem. at 8.) With respect to the fact that the

two bricks of heroin had been seized, the government asserted that the heroin was "contraband and [Congress] demanded its immediate forfeiture [] independent of any other forfeiture authority" (*id.* at 9 (citing 21 U.S.C. § 881(f)(1))), and thus, "neither the defendant, nor any third party, can maintain a legal interest in the drugs" (*id.* (citation omitted)).

This Court held a forfeiture hearing in this matter on July 5, 2018. During the hearing, defense counsel conceded that the requested specific property—including the firearm, ammunition, and $14,707 in U.S. currency—was subject to forfeiture, but objected to the $180,000 forfeiture money judgment that the government had proposed. (*See* Hr'g Tr. at 4:16–5:8, 40:12–16.) The government maintained its position regarding the $180,000 money judgment, but asked the Court to consider, in the alternative, a money judgment in the amount of $40,000, representing the amount that the record evidence suggested Young was owed from various people to whom he had sold drugs. (*See id.* at 42:5–10.) Given this request, which was followed by defense counsel's objection that the defense had not previously been notified of this theory of forfeiture, the Court instructed the government to file a supplemental brief regarding the alleged justification for a $40,000 money judgment. (*See id.* at 44:1–48:13.) The government subsequently filed a second supplemental memorandum, pointing to evidence in the record (including Young's own statements) to the effect that Young was owed $40,000 from street-level distributors to "be paid back after the narcotics that were fronted are sold," and with respect to this amount, asserting that the anticipated $40,000 qualified as facilitating property that is forfeitable in the form of a money judgment. (Gov't's Supp. To Mem. Regarding Forfeiture ("Gov't's 2d Supp. Mem."),

ECF No. 62, at 5)  Defense counsel did not file any written response to this forfeiture argument.

On July 16, 2018, this Court issued its preliminary order of forfeiture.  The Order required forfeiture of the firearm, ammunition, and $14,707 in U.S. currency—items that the parties did not dispute.  (*See* Prelim. Order of Forfeiture at 3–4.)  The Court also found that Young was owed $40,000 as proceeds obtained from drug sales, and that that money was presently unavailable, such that a money judgment in the amount of $40,000 based on sections 853(a)(1) and 853(p) of Title 21 of the United States Code was warranted.  (*See id*. at 4–5.)  The Court's preliminary order of forfeiture, which became final at Young's sentencing on July 19, 2018, did not order a money judgment in the amount of $180,000, as the government had requested; as explained below, this Court finds such an order inappropriate under the circumstances presented here.

## II.    LEGAL STANDARD

Criminal forfeiture is an *in personam* action against a criminal defendant, as distinguished from civil forfeiture actions, which are brought *in rem* against the property to be forfeited.  *See Alexander v. United States*, 509 U.S. 544, 559 n.4 (1993). In the instant matter, the forfeiture related to Young's drug offense (Count One of the indictment) is governed by Title 21, section 853 of the United States Code, which Congress enacted pursuant to the Comprehensive Forfeiture Act of 1984 ("the CFA"), Pub. L. No. 98-473, §§ 302–03, 98 Stat. 1837, 2040–57 (1984).[3]

---

[3] The Comprehensive Forfeiture Act of 1984 constitutes Chapter III of the Comprehensive Crime Control Act of 1984 ("CCCA").  *See* Terry Reed, *Criminal Forfeiture under the Comprehensive Forfeiture Act of 1984: Raising the Stakes*, 22 Am. Crim. L. Rev. 747, 749 (1985).  Notably, some of

Under section 853(a), forfeiture applies to "any person" convicted of certain drug offenses that are criminalized in Title 21. 21 U.S.C. § 853(a). Section 853(a) outlines three categories of property subject to forfeiture: (1) "any property constituting, or derived from, any *proceeds* the person obtained, directly or indirectly, as the result of" the crime, *id.* § 853(a)(1) (emphasis added); (2) "any of the person's property used, or intended to be used, in any manner or part, to commit, or to *facilitate* the commission of" the crime, *id.* § 853(a)(2)(emphasis added); and (3) in the case of persons "convicted of engaging in a continuing criminal enterprise" under Title 21, section 848 of the United States Code, any of the first two described categories of property, in addition to any property or interest "affording a source of control over[] the continuing criminal enterprise[,]" *id.* § 853(a)(3). As the Supreme Court has explained, "[t]hese provisions, by their terms, limit forfeiture under § 853 to *tainted* property"— i.e., either property "flowing from" a criminal offense (a la section 853(a)(1)), or property used in the commission of "the crime itself" (per section 853(a)(2)). *Honeycutt v. United States*, 137 S. Ct. 1626, 1632 (2017) (emphasis added); *cf. id.* (commenting that "[t]he limitations of § 853(a) thus provide the first clue that the statute does not countenance joint and several liability, which, by its nature, would require forfeiture of untainted property").

To be clear, the first prong of the forfeiture section—section 853(a)(1)—reflects the 'proceeds' theory of forfeiture, and as noted, the statute requires a defendant to relinquish "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of" the crime. 21 U.S.C. § 853(a)(1). This

---

the forfeiture literature refers to the CCCA and the CFA interchangeably.

section takes a broad view of proceeds that covers both the original proceeds of criminal behavior and what Congress refers to as "derivative proceeds[,]" i.e., property that the original proceeds were used on or exchanged for, "such as corporate stock, legitimate businesses, and real estate which may be unrelated to the drug operation, but which are purchased, maintained, indirectly or directly, with the proceeds of the illegal transactions." H.R. Rep. 98-845, pt. 1, at 5 (1984). This is apparent in the plain language of the section, which refers not only to the proceeds themselves ("property constituting . . . any proceeds") but also "property . . . derived from[] any proceeds[.]" 21 U.S.C. § 853(a)(1). Likewise, the offending proceeds or derivative property can have been "obtained[] directly *or indirectly*" from the crime. *Id.* (emphasis added). Thus, section 853(a)(1) plainly reflects the core forfeiture concept that an offender should not be able to benefit from the "ill-gotten gains" of his criminal behavior. *United States v. Monsanto*, 491 U.S. 600, 616 (1989); *see also* Jimmy Gurulé, Sandra Guerra Thompson & Michael O'Hear, *The Law of Asset Forfeiture* § 7-1(a) (2d ed. 2004) (explaining that the legislative intent of forfeiture statutes is to strip criminals of their "ill-gotten gains").

The second prong of section 853(a) of Title 21—section 853(a)(2)—reflects the 'facilitating property' theory of criminal forfeiture, and thus requires the forfeiture of "any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of" the crime. 21 U.S.C. § 853(a)(2); *see Honeycutt*, 137 S. Ct. at 1633 (explaining that "[s]ection 853(a)(2) mandates forfeiture of property used to facilitate the crime but limits forfeiture to 'the person's property'"). Such facilitating property is property that, while not tainted at its origin like proceeds,

*becomes* tainted because it is used in furtherance of the illegal activity. For example, if a defendant buys a car or a boat with legitimate funds (and thus these items are not initially tainted as derivative of illegal conduct), such vehicles can become tainted if the defendant uses them to collect, deliver, or distribute drugs. *See, e.g.*, *United States v. McKinney*, No. 7-cr-0113-01, 2009 WL 10701319, at *7 (D.D.C. Mar. 26, 2009) (explaining that even property used the majority of the time for legitimate purposes may nevertheless be forfeitable as facilitating property). With respect to the theory behind the forfeiture of facilitating property, confiscation is meant to take away the tools of the trade that made the crime possible. *See* David Pimentel, *Forfeitures Revisited: Bringing Principle to Practice in Federal Court*, 13 Nev. L.J. 1, 41 (2012).

Notably, in addition to the types of tainted (i.e., forfeitable) property outlined in section 853(a), section 853(p) allows for the forfeiture of otherwise untainted property as "substitute property" in the event that otherwise forfeitable property is rendered unavailable "as a result of any act or omission of the defendant[.]" 21 U.S.C. § 853(p)(1). The requisite unavailability is prescribed by statute and exists only in the following circumstances: where the actual tainted property (A) "cannot be located upon the exercise of due diligence"; (B) "has been transferred or sold to" a third party; (C) "has been placed beyond the jurisdiction of the court"; (D) "has been substantially diminished in value"; or (E) "has been commingled with other property" that "cannot be divided without difficulty." *Id.*; *see also Honeycutt*, 137 S. Ct. at 1633 (describing section 853(p) as "the sole provision of § 853 that permits the Government to confiscate property untainted by the crime"). Under these circumstances, the court can "order the forfeiture of any other property of the defendant, up to the value of" the unavailable

forfeitable property. 21 U.S.C. § 853(p)(2); *see also Honeycutt*, 173 S. Ct. at 1634.

Significantly for present purposes, it is important to recognize that the pertinent statutory text does not explicitly contemplate the availability of forfeiture money judgments. *See* 21 U.S.C. § 853(b) (defining the term "property" as either (1) "real property, including things growing on, affixed to, and found in land" or (2) "tangible and intangible personal property, including rights, privileges, interests, claims, and securities"). *But cf. Monsanto*, 491 U.S. at 60 (opining that the forfeiture statute "provides a broad definition of 'property' when describing what types of assets are within the section's scope"). In the past decade, however, a majority of circuits—including the D.C. Circuit—has coalesced around the view that money judgments are permissible under section 853. *See United States v. Day*, 524 F.3d 1361, 1377–78 (D.C. Cir. 2008); *see, e.g.*, *United States v. Awad*, 598 F.3d 76, 78 (2d Cir. 2010) (per curiam); *United States v. Vampire Nation*, 451 F.3d 189, 201–02 (3d Cir. 2006); *United States v. Casey*, 444 F.3d 1071, 1077 (9th Cir. 2006); *United States v. Hall*, 434 F.3d 42, 59–60 (1st Cir. 2006); *United States v. Baker*, 227 F.3d 955, 970 (7th Cir. 2000). These courts have typically authorized money judgments when established proceeds of the defendant's criminal activity are no longer in the defendant's possession at the time of sentencing and the government has not otherwise recovered such proceeds. (*See* Part III.A, *infra*.)

## III.   DISCUSSION

This Court has declined to order a $180,000 money judgment based on the estimated monetary value of the two kilograms of heroin that the government seized from Young's residence because, as explained fully below, there is no statutory or

common-sense justification for the government's suggestion that it is authorized *both* to seize contraband drugs *and also* to obtain a money judgment for the amount that the defendant allegedly used to purchase those very same drugs.  The government's request for a money judgment under these circumstances bears no relationship to the usual purpose of money judgments in the criminal forfeiture context, which is to prevent the dissipation of illegal proceeds by an offender who might otherwise profit from his ill-gotten gains.  What is more, the proposed money judgment finds absolutely no support in the text of the applicable criminal forfeiture statute.

As requested here, if the $180,000 money judgment is meant to be a substitute for the heroin that the government seized from Young's house, the government has not adequately explained how the requested money judgment could possibly qualify as substitute property within the meaning of section 853(p)(1), when the drugs were actually recovered and thus were not dissipated or otherwise unavailable.  Alternatively, to read section 853(a)(2) as the government suggests—i.e., to authorize a money judgment for the monetary value of seized drugs on the grounds that the money the defendant used to purchase those drugs is inherently tainted 'facilitating' property even though it was spent on something that the government has already seized—constitutes impermissible double counting and stretches the forfeiture doctrine beyond all reasonable limits.  And the fact that the property recovered here (the heroin) is itself illegal contraband, means only that there is an independent basis for the government to have seized the drugs and is otherwise entirely irrelevant to the proper criminal forfeiture analysis under section 853.

**A.   Courts Have Ordered Money Judgments To Promote Congress's Clear Intent To Prevent Defendants From Avoiding Forfeiture By Dissipating Assets, And That Rationale Does Not Apply Here**

To properly situate the forfeiture request that is at issue in this case, it is helpful to understand the concerns that Congress sought to address through the forfeiture provisions in section 853.  Criminal forfeiture was not part of the federal criminal justice system in the United States at all until 1970, when Congress passed the Comprehensive Drug Abuse Prevention and Control Act of 1970.  *See* Avital Blanchard, *The Next Step in Interpreting Criminal Forfeiture*, 28 Cardozo L. Rev. 1415, 1421 (2006).  This new type of forfeiture was conceived of to permit the efficient consolidation of an existing criminal proceeding with the required procedures that result in the proper forfeiture of assets of the defendant, *see* S. Rep. No. 98-225, at 210 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3393; however, in practice, under the terms of the 1970 Act, a defendant could typically retain his assets until *after* his conviction, so offenders had ample time to avoid forfeiture altogether by spending, concealing, or disposing of the forfeitable property, *see id.* at 195; *see also* Claire Coward, *Fifth & Sixth Amendment Rights v. the Comprehensive Forfeiture Act of 1984*, 14 S.U. L. Rev. 247, 250–51 (1987).  Thus, despite high hopes for this enforcement mechanism, in the early days, criminal forfeiture did not prove to be an especially effective tool for recovering significant economic assets as a means of deterring illegal drug trafficking and organized crime.  *See, e.g.,* S. Rep. No. 98-225, at 194 (explaining that, while "the profits produced by drug trafficking [we]re estimated to be in the billions[,]" the seizures of assets in drug cases amounted to far less, and thus were "viewed with some disappointment"); *United States v. Nichols*, 841 F.2d 1485, 1487–88 (10th Cir. 1988).

In the years following the passage of the 1970 Act, Congress continued to investigate the workings of the criminal forfeiture provisions and to push for improvements to the system. *See* Sean D. Smith, *The Scope of Real Property Forfeiture for Drug-Related Crime Under the Comprehensive Forfeiture Act*, 137 U. Pa. L. Rev. 303, 315–316 (1988). Its efforts culminated in the Comprehensive Forfeiture Act of 1984, Pub. L. No. 98-473, §§ 302–03, 98 Stat. 1837, 2040–57 (1984), which amended the 1970 Act and created section 853.[4] The CFA was motivated in substantial part by Congress's concern that the 1970 Act had "fail[ed] adequately to address the phenomenon of defendants defeating forfeiture by removing, transferring, or concealing their assets prior to conviction[,]" S. Rep. No. 98-225, at 195, and in crafting section 853 in particular, Congress intended "both to preserve the availability of a defendant's assets for criminal forfeiture, and, in those cases in which he does transfer, deplete, or conceal his property, to assure that he cannot as a result avoid the economic impact of forfeiture." S. Rep. No. 98-225, at 196; *see, e.g.*, 21 U.S.C. § 853(p)(1) (providing for forfeiture of substitute property if otherwise forfeitable property cannot be reached "as a result of any act or omission of the defendant").

Consistent with this history, courts that have reached the conclusion that money judgments are permissible under section 853 have relied heavily on the notion that a convicted criminal defendant should not be able to evade the economic impact of criminal forfeiture by rendering the forfeitable property unavailable. In the D.C. Circuit, for example, forfeiture money judgments were found to be viable in a case called *United States v. Day*, 524 F.3d 1361 (D.C. Cir. 2008), in which the Circuit

---

[4] *See* n. 3, *supra*.

reasoned that "the open-ended nature of an order forfeiting the proceeds of an offense" under section 853 also necessarily permitted the court to take measures to ensure that an actual deprivation occurs, even when the defendant no longer possesses the property at issue. *Id.* at 1377 (quotation marks and citation omitted). The D.C. Circuit explained:

> We find it instructive that 21 U.S.C. § 853 contains no language limiting the amount of money available in a forfeiture proceeding *to those assets in the defendant's possession at the time forfeiture is ordered.* As the Ninth Circuit recently noted, "[c]riminal forfeiture under § 853, by definition, bears a direct relation to the proceeds of the crime. [It] is concerned not with how much an individual has but with how much he received in connection with the commission of the crime." *Casey*, 444 F.3d at 1077. Additionally, § 853(o) states that "[t]he provisions of this section shall be liberally construed to effectuate its remedial purposes." . . . We now join our sister circuits and hold that money judgments are appropriate in the criminal forfeiture context.

*Id.* at 1377–78 (emphasis added) (first, second, and third alterations in original).

Thus, the D.C. Circuit's approval of money judgments in the amount of the entirety of a defendant's ill-gotten gains rests largely on its conclusion that the court should ensure that the defendant realizes the economic impact of a forfeiture order, even in cases where the defendant has inadequate assets at the time of sentencing as a result of the defendant's own dissipation of the forfeitable assets. Similarly, as noted above, all of the other circuit decisions that are cited in *Day* approved money judgments to stand in for forfeitable proceeds under section 853(a)(1) when the defendant no longer possessed those proceeds due to his willful spending or dissipation of them. *See United States v. Hall*, 434 F.3d 42, 59 (1st Cir. 2006) (permitting a money judgment under section 853 because it "prevents a drug dealer from ridding himself of his ill-gotten gains to avoid the forfeiture sanction"); *United States v. Vampire Nation*, 451 F.3d 189, 202 (3d Cir. 2006) (allowing for a money judgment award in excess of

defendant's possessed funds because to find otherwise "would permit defendants who unlawfully obtain proceeds to dissipate those proceeds and avoid liability for their ill-gotten gains"); *United States v. Casey*, 444 F.3d 1071, 1076 (9th Cir. 2006) (finding that a forfeiture money judgment is proper under section 853 because the defendant "received funds that should never have been available for him to spend" and a money judgment rightly "negates any benefit he may have received from the money, ensuring that, in the end, he does not profit from his criminal activity").

Notably, all of these money-judgment cases involved the 'proceeds' theory of forfeiture rather than the 'facilitating property' theory for section 853 purposes, presumably because the rationale behind stripping the defendant of his ill-begotten gains conforms most closely with the scenario in which the defendant at some point possesses spoils from his illegal conduct but subsequently spends these tainted funds or hides them away. *See* Stefan D. Cassella, *Criminal Forfeiture Procedure: An Analysis of Developments in the Law Regarding the Inclusion of A Forfeiture Judgment in the Sentence Imposed in A Criminal Case*, 32 Am. J. Crim. L. 55, 74 (2004) ("Usually, the Government seeks a money judgment in cases where the defendant has obtained a certain quantity of money as the proceeds of the offense, but the money cannot be found."). Thus, money judgments are ordinarily deemed appropriate when there is some known, forfeitable asset—e.g., the proceeds of, or other property derived from the proceeds of, an established criminal offense—that the defendant should possess but that the government has not been able to recover because the defendant has made it unavailable.

This benchmark does not appear in the facts of the instant case, and this Court

has struggled mightily to ascertain how the standard rationale for money judgments provides any justification for the $180,000 money judgment that the government seeks here. The government suggests that it is entitled to a money judgment "reflecting the amount of the money that the defendant used to purchase the approximately two kilograms of heroin [that] the jury found [to be] in the defendant's possession with intent to distribute" because Young apparently spent that amount of money to facilitate his crime by buying the heroin that he possessed for distribution. (Gov't's Supp. Mem at 8.) But under this theory of facilitating property, the $180,000 was not willfully dispersed by Young in an attempt to avoid forfeiture, nor is it missing in any meaningful sense; rather, Young allegedly used that money to buy the drugs as part of the underlying offense, which means that it has been recovered by the government in the form of the asset that Young purchased. In other words, while it is the *unavailability* of forfeitable assets that appropriately gives rise to a money judgment that prevents the defendant from dispersing or disposing of such assets, the government's theory here is that the money Young spent to buy the drugs at issue constitutes "facilitating" property, which means that that money is *not* properly characterized as missing or unavailable; indeed, *its whereabouts are known*: the $180,000 has been traded for the goods that comprise or sustain the defendant's criminal acts.

A non-monetary example helps to illustrate the point. Imagine that a defendant is convicted of the production of child pornography under Title 18, section 2251(a) of the United States Code, and the evidence demonstrates that he used a fancy computer to edit and distribute the illegal pornographic images. There is no question that the

defendant's computer equipment is properly considered facilitating property under section 853(a)(2), because that equipment was a tool that aided the creation of the illegal images. And if the prosecutors can show that the defendant once possessed and utilized such a computer to make child pornography, but that the computer went missing prior to its recovery as a forfeitable item, one can reasonably infer that the defendant sold it or gave it away to a third party, and there is at least a reasonable argument that a money judgment should be imposed against the defendant for the value of the computer equipment because it was forfeitable property that the defendant should have had but that now cannot be located due to the defendant's own efforts. By contrast, when the government posits that the forfeitable "facilitating" property is the money that a defendant used to purchase illegal drugs that the government has recovered, that money *has* been located—its whereabouts are clear—as the government here notes, the defendant exchanged it for the drugs. (Gov't's Pretrial Mem at 13.)

To be sure, the defendant no longer physically possesses the particular dollars that he allegedly used to buy the illegal narcotics, but that is just the natural and necessary consequence of the very transaction that constitutes the defendant's criminal conduct; it is not due to any willful action by the defendant to thwart forfeiture by dissipating assets that were used to facilitate the commission of some *other* crime. And it is really only in the latter circumstance that a forfeiture money judgment—to substitute for forfeitable assets that the defendant has so dissipated, hidden, or disbursed—makes any sense. Put another way, in the instant context, the government has not alleged that the $180,000 represents missing ill-gotten gains from other criminal conduct by Young, nor has it shown that that money was a forfeitable asset that Young

has willfully dissipated, squirreled away, or otherwise removed from the government's reach so as to thwart its forfeiture in a manner that justifies holding him responsible for surrendering that money in the form of a forfeiture money judgment. Instead, the government freely admits that the $180,000 was *tendered in exchange for the drugs*, and if anything, became tainted *by that very act*—i.e., the money was effectively converted into the purchased heroin as part of the very activity that, according to the government, makes the money forfeitable 'facilitating' property in the first place. This set of circumstances distinguishes this case from those in which various circuits have authorized money judgments, and this Court sees no reason why the holdings of those circuits should be considered to extend to the facts presented here.

### B.   Where The Government Has Seized Forfeitable Property, Seeking A Money Judgment For The Value Of That Property Is Impermissible Double Counting

The government's forfeiture money-judgment theory fails for an additional reason: under the present circumstances, the $180,000 forfeiture money judgment that the government requests constitutes impermissible double counting in a manner that contravenes well-established principles of punishment and sentencing. To understand why this is so, recall that the $180,000 money judgment that the government seeks is specifically pegged to the value of the two kilograms of heroin that the government recovered from Young's house. The amount at issue is not a separate, or even separable, sum—the government readily admits that it has seized two kilograms of heroin that it says is worth $180,000, and by requesting a money judgment in that amount, it now seeks the cash value of those drugs as well. (*See* Gov't's Supp. Mem at 8.)

The government has provided no convincing argument for why such a double

recovery is permissible under section 853(a)(2). To be clear, that statutory provision does authorize the recovery of any facilitating property that is in the defendant's possession (or that is known to have been, and should be, in the defendant's possession). But Young did not have $180,000 in his possession when the government executed its search warrant; he had $180,000 worth of heroin. Thus, even setting aside the fact that the $180,000 is not missing in any meaningful sense (*see* Part III.A, *supra*), the money judgment that the government seeks here is *in addition to* the heroin that the government has seized, and is thus tantamount to the recovery of *both* a forfeitable asset of the defendant (the drugs) *and* the money that the defendant spent to procure that asset. Nothing in the statute even remotely suggests that Congress intended this result, and nothing in the government's sentencing memoranda or oral argument adequately accounts for this significant double-counting problem.

The strangeness of the government's recovered-item-plus-money-judgment theory of criminal forfeiture becomes evident when one considers, again, the example of the child pornography defendant and the computer equipment he used to commit the crime. Assume that instead of being missing, the offending computer is actually found in the defendant's home and is recovered. Under the government's theory, the government could seek forfeiture of *both* the computer *and* a money judgment in the value of the computer, on the grounds that that amount of money was used to purchase the computer equipment and thus such money arguably facilitated the child pornography crime. But the Court finds no trace of statutory authority for the proposed seizure of the tainted asset *and also* its monetary value (in the form of a money judgment). Nor does the government point to any prior case in which this theory of

forfeiture has been thoroughly evaluated and ultimately approved.

To the contrary, in a virtually identical situation, the Second Circuit expressed genuine skepticism about the propriety of such a double recovery. In *United States v. Stegemann*, 701 F. App'x 35 (2d Cir.), the district court had ordered a money judgment against the defendant under section 853 reflecting the value of seized drugs—precisely what the government seeks in the instant case. *See id.* at 40, *cert. denied*, 138 S. Ct. 412 (2017). In reviewing the district court's forfeiture determination, the Second Circuit vacated the money judgment and remanded the matter for further factual development, on the grounds that "[t]he record does not reveal why the government obtained a money judgment based on the value of the drugs seized, particularly where the defendant was convicted of possession with intent to distribute and no proceeds resulting from the crime of conviction appear to have been attributed to him." *Id.* The Second Circuit's doubts plainly reflect the concern that, where the drugs in question have been seized by the government, there is no legal basis for a money judgment *based on the monetary value of those same drugs*, because the defendant has already forfeited the tainted property.

Moreover, and more generally, courts have routinely recognized that double counting is flatly prohibited in the context of criminal forfeiture. Such concerns typically arise (and are expressed) when the government undertakes the calculation of forfeitable proceeds. *See, e.g.*, *United States v. King*, 231 F. Supp. 3d 872, 918 (W.D. Okla. 2017) ("[T]he government is not entitled to run up the forfeiture score by double counting."); *United States v. McKay*, 506 F. Supp. 2d 1206, 1211 (S.D. Fla. 2007), *aff'd*, 285 F. App'x 637 (11th Cir. 2008) ("[T]he Court concurs that double counting of

proceeds is prohibited in calculating the amount to be forfeited."). Courts have also cautioned against allowing the same funds or property to be ordered forfeited multiple times under different forfeiture provisions. *See, e.g.*, *United States v. Segal*, 495 F.3d 826, 839–40 (7th Cir. 2007) (warning against "double billing" and remanding the case to the district court to separate out funds that were reinvested into a criminal enterprise from funds received as proceeds by the defendant, since the entire enterprise was to be forfeited); *United States v. Ofchinick*, 883 F.2d 1172, 1182 (3rd Cir. 1989) (noting that the forfeiture verdict would double if the property was forfeitable under two different provisions of the forfeiture statute); *United States v. Tedder*, No. 02-CR-0105-C-01, 2003 WL 23204849, at *4 (W.D. Wis. July 28, 2003) (rejecting the idea, in the context of money laundering, that the same funds can be forfeited multiple times because they were involved in multiple transactions); *United States v. Demik*, No. 3:04-CR-289-H, 2005 WL 7360425, at *2 (N.D. Tex. Nov. 21, 2005) (refusing to countenance the government's assertion that the same amount of money can be forfeited once as proceeds and another time because it was laundered, because this "represents impermissible double-counting").

In this Court's view, the pernicious double-counting problem is especially acute when *money* is the requested forfeitable asset, as is evident from the above collection of cases, and this is presumably so because of the fungible nature of cash (as opposed to other forms of forfeitable property). Money and tangible property can easily be counted twice when they stem from the same source, and that outcome is something that has given many courts pause. *See, e.g., United States v. Genova*, 333 F.3d 750, 762 (7th Cir. 2003) ("[T]o order [the money received in bribes] forfeited once as cash and a

second time as building materials [which the money was invested in] is double counting. . . . [T]he value may be forfeited once, as cash or as an interest in the property, but not twice.").

The cases that the government relies on to support its novel criminal forfeiture theory here are not to the contrary. The government cites two district court cases from other circuits as support for its argument that the money used to purchase recovered drugs is forfeitable under section 853 as facilitating property: *United States v. Crews*, 885 F. Supp. 2d 791 (E.D. Pa. 2012), and *United States v. Harrison*, No. 99-CR-934-1, 2001 WL 803695, at *1 (N.D. Ill. June 28, 2001). (*See* Gov't's Supp. Mem. at 8.) But neither of these cases involved the granting of a forfeiture money judgment in the amount of the money that the defendant used to purchase drugs *in a situation where the drugs had also been seized*. In *Crews*, the drugs forming the basis of the drug conspiracy conviction had *not* been recovered, and the district court estimated the amount of facilitating money based on testimony offered by witnesses who had sold drugs to the defendants on a regular basis during a period that spanned several years. *See Crews*, 885 F. Supp. 2d at 792–799. Likewise, in *Harrison*, the defendant had pled guilty to a possession-with-intent-to-distribute charge spanning seven years, and the drugs in question had not been seized by the government. *See Harrison*, 2001 WL 803695, at *1. Therefore, these cases do not bolster the government's contention that a money judgment in the value of the heroin actually seized from Young's house is appropriate.

It is also significant that double counting is considered especially taboo in the context of criminal punishment. The Third Circuit has articulated the problem as the

fact that double counting in sentencing "introduce[s] an arbitrariness in the statute that could not have been contemplated by Congress[,]" *Ofchinick*, 883 F. 2d at 1182, and indeed, sentences that include double counting implicate even graver concerns, because they raise the specter of an impermissible extension of the court's authority to sentence under our constitutional scheme. *Cf.* Akhil Reed Amar, *Double Jeopardy Law Made Simple*, 106 Yale L.J. 1807, 1815 (1997) (explaining that duplicative punishment is "in obvious violation of basic principles of the rule of law" because it is the result of a court imposing greater punishment than that authorized by the legislature); Gary Swearingen, *Proportionality and Punishment: Double Counting Under the Federal Sentencing Guidelines*, 68 Wash. L. Rev. 715, 718–20, 719 n.40, 726–30 (1993) (comparing permissible double-counting of sentencing factors when explicitly authorized by the legislature with impermissible double-counting by courts). As relevant here, the mere fact that the government's suggested course of action required the Court to order recovery of *both* the assets of the defendant that were used to facilitate the crime *and* the amount of money that the defendant once tendered to purchase those same assets casts considerable doubt upon the government's contention that the forfeiture statute must be read to authorize this troublesome result. *Cf. Clark v. Martinez*, 543 U.S. 371, 381 (2005) (describing constitutional avoidance as an interpretive tool that gives effect to congressional intent by way of the "reasonable presumption that Congress did not intend the [interpretation] which raises serious constitutional doubts").

C.    **The Fact That The Seized Property Is Inherently Forfeitable As Contraband Is Irrelevant To The Section 853 Forfeiture Analysis**

Finally, this Court must evaluate what appears to be the government's only

response to the conclusion that its $180,000 forfeiture money-judgment request was plucked from thin air (Part III.A, *supra*) and results in impermissible double counting (Part III.B, *supra*)—the government's vigorous assertion that the requested money judgment is appropriate under section 853 because the heroin seized in Young's house *does not count to begin with*, given that illegal drugs are inherently forfeitable as contraband. (*See* Gov't's Supp. Mem. at 8–9.) To hear the government tell it, the two kilograms of heroin that were recovered from Young's home are essentially a nullity for forfeiture purposes, because illegal drugs are "contraband and [Congress] demanded [their] immediate forfeiture [] independent of any other forfeiture authority[.]" (Gov't's Supp. Mem. at 9 (citing 21 U.S.C. § 881(f)(1)).) Thus, the government's brief points out that "neither the defendant, nor any third party, can maintain a legal interest in the drugs" in the first place. (*Id.*) Additionally, during the hearing, government counsel argued that the drugs at issue here were plainly distinguishable from other forfeitable property, because the government is required to destroy the seized heroin by law and cannot resell, repurpose, or otherwise recover value from the heroin, in contrast to other types of forfeitable goods. (Forfeiture Hr'g Tr. at 9:8–10:17; *see id.* at 10:4–6 ("[W]e don't have $180,000 worth of goods because it's destroyed immediately pursuant to statute.").) Neither of these heroin-as-contraband arguments cures the above-identified problems with the government's forfeiture money-judgment theory, and thus neither persuades this Court that the government's $180,000 forfeiture request passes muster.

First of all, it is clear to this Court that the government has taken its "no legal property interest" in illegal narcotics argument much too far. To have a legally

enforceable property interest in something generally means that one has the right to exclude others from using it, as well as the concomitant right to bring a legal action to prevent its unauthorized use or to compel others to return it to its rightful owner. *See, e.g.*, Joseph William Singer, *The Reliance Interest in Property*, 40 Stan. L. Rev. 611, 650 (1988) (describing the state's role in enforcing exclusivity as one dimension of property interests). Thus, the property interest that a state regulates and enforces as a matter of law is, as a general matter, merely an interest in *exclusivity*, and the *absence* of such a property interest (*see* Gov't's Supp. Mem. at 9) says nothing about whether the person who is in possession of the item at issue paid good money for it, nor does it bear on whether the government can require such payor to relinquish not only that item but also the amount of money that was tendered to purchase it.

Consequently, while the government is surely correct when it contends that Young had no "legal property interest" in the two kilograms of heroin that he allegedly tendered $180,000 to purchase (in the sense that he had no exclusive right to those drugs and could not prevent their seizure by the government), it does not follow that the contraband status of the seized narcotics renders that heroin valueless from Young's standpoint, such that the government should not be deemed to have affected an actual deprivation of a valuable asset of Young's for the purpose of the forfeiture statutes. *See* 21 U.S.C. § 853(b) (defining "[p]roperty subject to forfeiture" broadly, to include all "tangible and intangible personal property," and *not* expressly excluding property that is otherwise forfeitable as contraband). In other words, contraband or no, Young cannot get his money back; by virtue of the government's seizure, he is out the $180,000 that he paid for those illicit goods. And the fact that the government might

rightly rely on a separately applicable statutory provision to justify seizing the heroin that Young allegedly tendered $180,000 to purchase does not fix the double counting problem from the standpoint of the one whose conduct forfeiture is meant to punish—regardless, that same asset is being counted twice. *See, e.g.*, *Segal*, 495 F.3d at 839–40; *Ofchinick*, 883 F.2d at 1182; *Demik*, 2005 WL 7360425, at *2.

The government's other contention—that the two kilograms of heroin cannot be resold or otherwise repurposed to recover its value—fares no better. The animating idea behind this argument appears to be that the government is entitled to the issuance of a money judgment whenever it cannot be made whole with respect to forfeited items, but *that* concept has no basis in forfeiture doctrine, and in fact, it ignores the clear purpose of the criminal forfeiture provisions. As explained in Part II, *supra*, Congress has made criminal forfeiture an aspect of a defendant's sentence, and there is no question that forfeiture is intended "to operate as punishment for criminal conduct[.]" *Libretti v. United States*, 516 U.S. 29, 38–39 (1995). Thus, the forfeiture tally is appropriately made based not on what the government *gains*, but on what the defendant *loses* as a penalty for his criminal acts. *See United States v. Bajakajian*, 524 U.S 321, 329 (1998) (emphasizing forfeiture's punitive purpose and rejecting a remedial theory of forfeiture of currency unrelated to the government's alleged loss). Several of the purposes of punishment—including just deserts and deterrence—demand consideration of the impact of the proposed penalty on the criminal defendant, and from Young's perspective, the government has already seized his heroin, and along with that seizure, he has forfeited the monetary value of that asset (i.e., the $180,000 that he allegedly used to purchase those drugs). Whether or not the government can *also* reap a benefit

from this seizure (defined, very practically, as the resale value of the seized asset) is utterly beside the point.[5]

## IV.  CONCLUSION

For the reasons explained above, neither the language of the criminal forfeiture statute nor its theory and purpose supports the government's request for a $180,000 money judgment as a representation of the estimated value of the heroin that the government recovered from Young's home.  Thus, this Court has rejected the government's request for a $180,000 money judgment under Title 21, section 853(a)(2) of the United States Code under the circumstances presented in this case.


DATE:  September 13, 2018          *Ketanji Brown Jackson*
                                   KETANJI BROWN JACKSON
                                   United States District Judge

---

[5] For this same reason, the government's argument that the recovered drugs should be deemed to have no value because they "cannot be converted into any amount of value" is unconvincing.  (Forfeiture Hr'g Tr. at 12:22–23.)  There is nothing in the law that requires the court to ensure either that the government is able to recover full value from its resale of forfeited property or that it be made whole for the difference between what the defendant relinquishes and what the government receives if it is unable to resell forfeited goods.